# UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF TEXAS
### SAN ANTONIO DIVISION

| | | |
|---|---|---|
| **ROSA H. RODRIGUEZ,** | § | |
| | § | |
| **Plaintiff,** | § | |
| **v.** | § | **CIVIL ACTION NO.** |
| | § | |
| **MICHAEL J. ASTRUE,** | § | **SA-09-CA-999- XR** |
| **Commissioner of the Social** | § | |
| **Security Administration,** | § | |
| | § | |
| **Defendant.** | § | |

## <u>ORDER</u>

On this date, the Court considered the Report and Recommendation filed by the Magistrate Judge, and Plaintiff's objections thereto, concerning Plaintiff's appeal of the Commissioner's decision to deny her Social Security benefits. After careful consideration, the Court will not accept the Magistrate Judge's recommendation to affirm the Commissioner's denial of benefits, and will remand the case to the Commissioner for further deliberation in accordance with this decision.

## INTRODUCTION

Plaintiff Rosa H. Rodriguez seeks review and reversal of the administrative denial of her application for Disability Insurance Benefits (DIB) for a period of disability and Supplemental Security Income (SSI) by the Administrative Law Judge (ALJ). Rodriguez contends that the ALJ erred by finding her not disabled. Rodriguez maintains that the ALJ made errors of law that require the Court to reverse the decision of the defendant, the Commissioner of the Social Security Administration (SSA), denying her benefits. Rodriguez asks the Court to reverse the decision and to render judgment in her favor. In the alternative, Rodriguez asks the Court to remand this case for further factual development.

## ADMINISTRATIVE PROCEEDINGS

Rodriguez fully exhausted her administrative remedies prior to filing this action in federal court.  Rodriguez filed concurrent applications for DIB and SSI benefits November 21, 2005, alleging disability beginning June 6, 2005.  The Commissioner denied the applications initially and on reconsideration.  Rodriguez then asked for a hearing.  A hearing was held on November 6, 2007 before Administrative Law Judge Robert Marcinkowski.  The ALJ issued a decision on November 19, 2007, concluding that Rodriguez was not disabled within the meaning of the Social Security Act (the Act) from June 6, 2005 through the date of his decision.  Rodriguez asked for review of the decision on June 4, 2008.  The SSA Appeals Council concluded on October 29, 2009 that no basis existed for review of the ALJ's decision.  The ALJ's decision became the final decision of the Commissioner for the purpose of the Court's review pursuant to 42 U.S.C. § 405(g).  Rodriguez filed this action seeking review of the Commissioner's decision on December 16, 2009.[1]

## ANALYSIS

### Standard of Review

In reviewing the Commissioner's decision denying disability benefits, the reviewing court is limited to determining whether substantial evidence supports the decision and whether the Commissioner applied the proper legal standards in evaluating the evidence.[2]  "Substantial evidence is more than a scintilla, less than a preponderance, and is such relevant evidence as a reasonable

---

[1] *See* Pl.'s Complaint, Dec. 16, 2009 (Docket Entry No 1).

[2] *Martinez v. Chater*, 64 F.3d 172, 173 (5th Cir. 1995); 42 U.S.C. §§ 405(g), 1383(c)(3).

mind might accept as adequate to support a conclusion."[3]  Substantial evidence "must do more than create a suspicion of the existence of the fact to be established, but 'no substantial evidence' will only be found when there is a 'conspicuous absence of credible choices' or 'no contrary medical evidence.'"[4]

If the Commissioner's findings are supported by substantial evidence, then they are conclusive and must be affirmed.[5]  In reviewing the Commissioner's findings, a court must carefully examine the entire record, but refrain from re-weighing the evidence or substituting its judgment for that of the Commissioner.[6]  Conflicts in the evidence and credibility assessments are for the Commissioner and not for the courts to resolve.[7]  Four elements of proof are weighed by the courts in determining if substantial evidence supports the Commissioner's determination: (1) objective medical facts, (2) diagnoses and opinions of treating and examining physicians, (3) the claimant's subjective evidence of pain and disability, and (4) the claimant's age, education and work experience.[8]

---

[3]*Villa v. Sullivan*, 895 F.2d 1019, 1021-22 (5th Cir. 1990) (quoting *Hames v. Heckler*, 707 F.2d 162, 164 (5th Cir. 1983)).

[4]*Abshire v. Bowen*, 848 F.2d 638, 640 (5th Cir. 1988) (quoting *Hames*, 707 F.2d at 164).

[5]*Martinez*, 64 F.3d at 173.

[6]*Ripley v. Chater*, 67 F.3d 552, 555 (5th Cir. 1995); *see also Villa*, 895 F.2d at 1021 (The court is not to reweigh the evidence, try the issues *de novo*, or substitute its judgment for that of the Commissioner.).

[7]*Martinez*, 64 F.3d at 174.

[8]*Id*.

### Entitlement to Benefits

Every individual who is insured for disability benefits, has not reached retirement age, meets certain income and resource requirements, has filed an application for benefits, and is under a disability, is eligible to receive DIB.[9]  Every individual who meets certain income and resource requirements, has filed an application for benefits, and is under a disability, is eligible to receive SSI benefits.[10]  The term "disabled" or "disability" means the inability to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months."[11]  A claimant shall be determined to be disabled only if her physical or mental impairment or impairments are so severe that she is unable to not only do her previous work, but cannot, considering her age, education, and work experience, participate in any other kind of substantial gainful work which exists in significant numbers in the national economy, regardless of whether such work exists in the area in which the claimant lives, whether a specific job vacancy exists, or whether the claimant would be hired if she applied for work.[12]

### Evaluation Process and Burden of Proof

Regulations set forth by the Commissioner prescribe that disability claims are to be evaluated according to a five-step process.[13]  A finding that a claimant is disabled or not disabled at any point

---

[9] 42 U.S.C. § 423(a)(1).

[10] 42 U.S.C. § 1382(a)(1) & (2).

[11] 42 U.S.C. § 1382c(a)(3)(A).

[12] 42 U.S.C. § 1382c(a)(3)(B).

[13] 20 C.F.R. §§ 404.1520 and 416.920.

in the process is conclusive and terminates the Commissioner's analysis.[14]

The first step involves determining whether the claimant is currently engaged in substantial gainful activity.[15]  If so, the claimant will be found not disabled regardless of her medical condition or her age, education, or work experience.[16]  The second step involves determining whether the claimant's impairment is severe.[17]  If it is not severe, the claimant is deemed not disabled.[18]  In the third step, the Commissioner compares the severe impairment with those on a list of specific impairments.[19]  If it meets or equals a listed impairment, the claimant is deemed disabled without considering her age, education, or work experience.[20]  If the impairment is not on the list, the Commissioner, in the fourth step, reviews the claimant's residual functional capacity and the demands of her past work.[21]  If the claimant is still able to do her past work, the claimant is not disabled.[22]  If the claimant cannot perform her past work, the Commissioner moves to the fifth and final step of evaluating the claimant's ability, given her residual capacities, age, education, and work

---

[14]*Leggett v. Chater*, 67 F.3d 558, 564 (5th Cir. 1995).

[15]20 C.F.R. §§ 404.1520 and 416.920.

[16]*Id.*

[17]*Id.*

[18]*Id.*

[19]*Id.*

[20]*Id.*

[21]*Id.*

[22]*Id.*

experience, to do other work.[23]   If the claimant cannot do other work, then she will be found disabled.

The claimant bears the burden of proof at the first four steps of the sequential analysis.[24] Once the claimant has shown that he or she is unable to perform his or her previous work, the burden shifts to the Commissioner to show that there is other substantial gainful employment available that the claimant is not only physically able to perform, but also, taking into account her exertional and nonexertional limitations, able to maintain for a significant period of time.[25]   If the Commissioner adequately points to potential alternative employment, the burden shifts back to the claimant to prove that he or she is unable to perform the alternative work.[26]

### Findings and Conclusions of the ALJ

In the instant case, the ALJ reached his decision at step five of the evaluation process.  At step one, the ALJ determined that Rodriguez had not engaged in substantial gainful activity since her alleged onset date.  At the second and third steps of the evaluation process, the ALJ found that Rodriguez has the severe impairments of back disorder and idiopathic scoliosis (status post surgery), but that these impairments do not meet or equal a listed impairment.  At step four, the ALJ found that Rodriguez is unable to perform any past relevant work. The ALJ based this conclusion on Rodriguez's testimony that she was on her feet most of the time in her past jobs and on medical evidence limiting Rodriguez's ability to stand and walk up to two hours in an eight-hour workday.

---

[23]*Id*.

[24]*Leggett*, 67 F.3d at 564.

[25]*Watson  v. Barnhart*, 288 F.3d 212, 217 (5th Cir. 2002).

[26]*Anderson v. Sullivan*, 887 F.2d 630, 632-33 (5th Cir. 1989).

At step five, based upon the overall medical evidence and the opinions of Dr. Sanchez-Caso and Dr. Iqbal, the ALJ determined that Rodriguez "is capable of sitting six hours in an eight-hour work day" and thus can "perform well at the sedentary exertional level with occasional postural limitations." The ALJ concluded  that Rodriguez is not disabled as defined in the Social Security Act.

### Rodriguez's Allegations of Error

Rodriguez claims that the ALJ erred in determining that she was not under a disability as defined by the Act through the date of the decision and, therefore, not eligible for benefits.  In particular, Rodriguez contends that (1) the ALJ erred by failing to follow the treating physician rule, (2) the Appeals Council erred by failing to properly consider new and material evidence, (3) the ALJ erred by failing to properly evaluate Rodriguez's credibility, and (4) the ALJ erred by failing to obtain testimony of a vocational expert at step five of the evaluation process.

### A. TheALJ Erred by Failing to Follow the Treating Physician Rule

The ALJ concluded that Rodriguez is "capable of sitting six hours in an eight-hour work day" and thus can "perform well at the sedentary exertional level with occasional postural limitations." The ALJ reached its determination that Rodriguez can do sedentary work based on his combined reading of the opinions of Dr. Sanchez-Caso and Dr. Mohammed Asif Iqbal.  The ALJ declined to give any weight to the opinion of treating physician Dr. Nau.

Rodriguez argues that the ALJ failed to accord proper weight to the opinion of two treating physicians, Dr. Luis Pio Sanchez-Caso and Dr. Lionel Nau, under the treating physicians rule.  Under this rule, great weight is accorded to the opinion of a treating physician who is familiar with the claimant's impairments, treatments and responses.[27]  Rodriguez maintains that had proper weight

---

[27]*Newton v. Apfel*, 209 F.3d 448, 455 (5th Cir. 2000).

7

been given to these two opinions, the ALJ could not have found that she is able to do sedentary work and would have found her disabled under the SSA.

**1. The Opinions of Plaintiff's Treating and Examining Physicians**

*a.  Opinion of Dr. Luis Pio Sanchez-Caso*

Dr. Sanchez-Caso is a specialist in orthopedic surgery of the spine and has been treating Rodriguez for her scoliosis since November 2002.  On June 13, 2005, Dr. Sanchez-Caso initially diagnosed Rodriguez with idiopathic scoliosis, severe lumbar spasms, and shoulder and cervical pain.[28]  On October 5, 2006, Dr. Sanchez-Caso gave a second diagnosis of idiopathic scoliosis R-T4-T12 at 40 degrees with chronic cervical and lumbar spasm and sprain.[29]  In a narrative accompanying his diagnosis, Dr. Sanchez-Caso opined that, due to the complexity of her condition, Rodriguez is unable to bend, rotate, or twist her back.  Dr. Sanchez-Caso further opined that Rodriguez is unable to sit more than 2 hours or stand/walk more than 2 hours.[30]  Dr. Sanchez-Caso did not specify whether this sitting limitation is restricted to no more than two hours in an eight-hour work day or no more than two hours at a time.  Dr. Sanchez-Caso concluded that Rodriguez "should be considered as a candidate for incapacity and the corresponding benefits."

*b. Opinion of Dr. Lionel Nau*

Dr. Nau is a family practitioner.  On September 5, 2007, Dr. Nau completed a "Medical Verification Form" in which he listed Rodriguez's diagnosis as idiopathic scoliosis at R-T4-T12 at

---

[28]Tr. at 163.

[29]Tr. at 272-273.

[30]Tr. at 276. The report states "Patient should not be sitting for prolong time >2 hours nor standing or walking >2 hours."

40 degrees with chronic cervical and lumbar pain.[31]  Dr. Nau opined that Rodriguez's condition prohibits her to do any kind of work.[32]  Dr. Nau opined that Rodriguez cannot sit, stand, or walk for prolonged time over 2 hours.[33]  The report of Dr. Lionel Nau also identified Plaintiff's limitations as "not sitting for prolong time <2 hours" and "standing or walking <2 hours, no lifting" and concluded that she was unable to perform even sedentary work.[34]  With regard to Dr. Nau's opinion, the ALJ stated, "This opinion is accorded little weight as a determination of disability is reserved for the Commissioner.  Moreover, there are no medical records supporting this opinion."[35]

*c.  Opinion of Examining Physician Dr. Asif Iqbal*

SSA examining physician Dr. Asif Iqbal also conducted a clinical exam of Plaintiff in relation to her disability claims.  Dr. Iqbal concluded that Plaintiff had "no limitation with sitting"; "mild to moderate limitation with short-distance walking"; and "moderate to severe limitation with prolonged walking."[36]

**2.  Plaintiff's Objections to ALJ's Conclusions**

Rodriguez argues that proper weight was not given to the opinion of Dr. Luis Pio Sanchez-Caso, specifically, to his two-hour sitting limitation.  Rodriguez reasons that, had the ALJ properly afforded greater weight to Dr. Sanchez-Caso's opinion, the ALJ would have concluded that

---

[31]Tr. at 273.

[32]*Id.*

[33]*Id.*

[34]*Id.*

[35]Tr. at 20.

[36]Tr. at 259.

Rodriguez is only able to sit a total of two hours in an eight-hour work day as opposed to concluding that Rodriguez can sit a total of six hours in an eight-hour work day with appropriate breaks.

Rodriguez asserts that the ALJ may have wrongfully adopted only the portion of Dr. Sanchez-Caso's opinion in which he found that Rodriguez can stand or walk no more than 2 hours and may have disregarded the portion of Dr. Sanchez-Caso's opinion finding that Rodriguez can sit no more than 2 hours.   Alternatively, Rodriguez asserts that the ALJ may have reached his determination that she is able to sit six hours in an eight-hour work day by erroneously construing Dr. Sanchez-Caso's two-hour sitting limitation to mean that Rodriguez is able to sit for two hours "at a time."   Rodriguez maintains that Dr. Sanchez-Caso's sitting limitation should instead be interpreted to mean that Rodriguez can sit for only two hours total in an eight-hour work day.  Under such an interpretation, Rodriguez asserts that Dr. Sanchez-Caso's two-hour sitting limitation essentially precludes sedentary work, which requires an individual to sit at least six hours in an eight hour workday.[37]

Rodriguez further argues that the ALJ erred in giving little weight to the opinion of Dr. Nau. Rodriguez explains that, although Dr. Nau did indirectly give an opinion on disability, Dr. Nau's report also provided a substantive medical opinion that Rodriguez is unable to sit, stand, or walk for periods over 2 hours.  Rodriguez further argues that, because the ALJ specifically decided to give little weight to Dr. Nau's opinion, the ALJ was required to provide an analysis of the six factors articulated in *Newton v. Apfel*, 209 F.3d 448 (5th Cir. 2000).

---

[37]SSR 96-9p, 1996 WL 374185 at *6.

### 3.  The ALJ Erred by Failing to Obtain Further Clarification and Thus Failing to Accord "Great Weight" to a Treating Physician's Opinion

The opinion of a treating physician must be accorded "great weight" in determining whether a claimant is disabled.[38]  The ALJ may give less weight to a treating physician's opinion only when "there is good cause shown to the contrary[.]"[39]  In determining whether to give controlling weight to a treating physician's opinion, the ALJ should analyze six specific factors relating to the evidence and the relationship between the physician and the claimant.[40]  If the ALJ finds that an opinion is not entitled to controlling weight, it does not mean that the opinion should be wholly rejected, as "treating source medical opinions are still entitled to deference..."[41]

When the records of a treating physician are unclear or incomplete, an ALJ "should seek clarification or additional evidence from the treating physician in accordance with 20 C.F.R. § 404.1512(e)."[42]  Such additional information should be sought from a treating physician when "the report from [the] medical source contains a conflict or ambiguity that must be resolved" or "the report does not contain all the necessary information."[43]  Furthermore, "the ALJ must consider all the record evidence and cannot 'pick and choose' only the evidence that supports his position."[44]

---

[38]*Newton,* 209 F.3d at 455.

[39]*Loza v. Apfel,* 219 F.3d 378, 395 (5th Cir. 2000) (quoting *Scott,* 770 F.2d at 485).

[40]*Newton,* 209 F.3d at 455.

[41]*Id.*

[42]*Id.* at 453.

[43]20 C.F.R. § 404.1512(e).

[44]*Loza,* 219 F.3d at 393.

11

ALJs are also cautioned against substituting their own medical judgment for that of a medical professional.[45]  "The medical expertise of the Social Security Administration is reflected in regulations; it is not the birthright of the lawyers who apply them.  Common sense can mislead; lay intuitions about medical phenomena are often wrong."[46]

As noted, Dr. Sanchez-Caso's opinion limited Rodriguez to sitting for a period of two hours, but was unclear whether he meant that she could sit for two hours at a time or for two hours total throughout the work day.  Dr. Iqbal's report concluded that Rodriguez had no limitation with sitting whatsoever.[47]  Considering plaintiff's activities of daily living together with Dr. Iqbal's report of no sitting limitation, the ALJ interpreted Dr. Sanchez-Caso's sitting limitation to mean that Rodriguez can sit no more than two hours "at a time."[48]  The ALJ stated that "based upon the overall objective evidence, the undersigned would limit the claimant to sedentary exertion consistent with the opinions of Dr. Sanchez-Caso and Dr. Iqbal."[49]  The ALJ reasoned that "[although] Dr. Sanchez-Caso states the claimant should not sit longer than two hours at a time, the claimant would have normal breaks during the day to use the restroom and lunch that would alleviate sitting six hours at one time."[50]

This Court finds that the ALJ erred in failing to obtain further clarification regarding Dr. Sanchez-Caso's conclusions.  Dr. Sanchez-Caso's report was unclear as to whether Plaintiff is

---

[45]*Frank v. Barnhart,* 326 F.3d 618, 622 (5th Cir. 2003).

[46]*Id.* (citing *Schmidt v. Sullivan,* 914 F.2d 117, 118 (7th Cir. 1990)).

[47]Tr. at 259.

[48]Tr. at 20.

[49]*Id.*

[50]*Id.*

unable to sit for more than two hours at a time or for more than two hours total throughout the day. This opinion directly bears on Rodriguez's ability to perform sedentary work.  Rather than seeking further clarification from Dr. Sanchez-Caso as required by *Newton* and the relevant federal regulations, the ALJ reached his conclusion by inappropriately picking which pieces of evidence on which to rely, and substituting his own judgment in place of the judgment of physician or medical professional.

The Court also finds that the ALJ erred in wholly dismissing the conclusions of Dr. Lionel Nau.  The ALJ rejected this opinion as conclusory and lacking supporting medical records.[51]  While an ALJ may give less weight to the opinion of a treating physician when "the treating physician's evidence is conclusory, is unsupported by medically acceptable clinical, laboratory, or diagnostic techniques, or is otherwise unsupported by the evidence,"[52] he is required to consider six specific factors relating to the evidence offered and the relationship between the claimant and the physician. *Newton,* 209 F.3d at 456.  The ALJ did not analyze these factors in his rejection of Dr. Nau's opinion.  Furthermore, rather than simply declining to give "controlling weight" to Dr. Nau's opinion, the ALJ rejected it entirely.  In this case, Dr. Nau's conclusions supported an alternative interpretation of Dr. Sanchez-Caso's report.  Rather than acknowledge this interpretation, the ALJ chose to ignore both Dr. Nau's conclusions and a viable interpretation of Dr. Sanchez-Caso's report in favor of other pieces of evidence.

This case should be remanded so that the ALJ can seek further clarification from Dr. Sanchez-Caso regarding the extent and details of Plaintiff's sitting limitation, and re-evaluate the

---

[51]*Id.*

[52]*Newton,* 209 F.3d at 456.

13

limitation and its effect on her ability to perform sedentary work.

**B.  The Appeals Council Erred by Failing to Properly Consider New and Material Evidence**

Dr. Donald I. Goldman is an orthopedic surgeon who conducted an examination of Rodriguez on August 20, 2008.  In his report, Dr. Goldman diagnosed Rodriguez as having cervical derangement and right radiculopathy, carpal tunnel syndrome of the right hand, open reduction internal fixation for idiopathic scoliosis of almost the entire spine from T4-L2, and lumbar derangement and radiculopathy.[53]  Dr. Goldman noted that he had reviewed numerous medical records.[54]  In his concluding discussion, Dr. Goldman had the following to say:

> As a result of the severe disabling impairment to her lumbar spine secondary to the Idiopathic Scoliosis and extensive Spinal surgery and the parethesias, numbness, and carpal tunnel syndrome of the right hand, she is unable to work in any type of of employment that would require her to bend, twist, climb, carry more that 5-10 lbs, crawl, run, jump, sit more than 10 minutes, stoop, kneel, squat, or perform meticulous motion and fine dexterity using her right hand. The severe extensive surgery causes pressure phenomenon in her spine due to metallic implants and fusion with grafting and she is not able to sit back against a hard chair or even lie down flat due to the change in architecture of the spine as a result of the surgery.[55]

Rodriguez argues that the Appeals Council erred by failing to consider Dr. Goldman's report, which she maintains is new and material evidence creating a reasonable probability that the outcome of the ALJ's decision would be different had the evidence been considered.  Rodriguez argues that, although Dr. Goldman's examination was conducted after the ALJ made its decision, it relates to the relevant period.  To support this argument, Rodriguez cites to the Fifth Circuit's decision in *Likes v. Callahan*, 112 F3d 189 (5th Cir. 1997), in which the court allowed retrospective evidence to be

---

[53]Tr. at 55.

[54]Tr. at 54-55.

[55]Tr. at 56.

considered as relevant evidence.[56]  Rodriguez reasons that Dr. Goldman indicated in his report that he had reviewed all of her past medical records related to the relevant period, and that this should be considered relevant, retrospective evidence.

When new and material evidence becomes available, and the claimant has good cause for failing to provide that evidence during the original proceedings, the district court is permitted to remand the case.[57]  A two-step analysis is required for a district court to determine whether remand is appropriate based on new and material evidence.[58]  First, the district court must determine whether the evidence relates to the time period for which the disability benefits were denied.[59]  Second, the district court must determine whether there is a reasonable probability that this new evidence would change the outcome of the ALJ's decision.[60]

Magistrate Judge Primomo points out that Dr. Goldman's report discusses much more severe limitations than those reported by Dr. Sanchez-Caso and Dr. Iqbal and also reports lower back pain and shoulder pain that was not discussed by other physicians.  Judge Primomo concludes that the first step of the new evidence analysis has not been satisfied because Dr. Goldman's report demonstrates that Rodriguez's condition has substantially deteriorated subsequent to the ALJ's

---

[56]*Likes* is a case concerning a claimant suffering from post-traumatic stress disorder (PTSD).  The court held that a retrospective medical diagnosis should have been considered because it related back to the claimed period of disability.  The court reasoned that PTSD is a type of condition that has unstable manifestations of its symptoms, meaning that the full extent of claimant's disability may not have been establish before the ALJ reached it decision.

[57]*Ripley v. Charter*, 67 F.3d 552, 555 (5th Cir, 1995).

[58]*Id*.

[59]*Id*.

[60]*Id*.

decision and thus is not material to the relevant time period.

This Court does not agree.  The report relates to the relevant time period and is relevant, retrospective evidence.  While the report does identify some new symptoms, such as Rodriguez's development of severe carpal tunnel in her right hand, it also clarifies and sheds further light on the limitations caused by her medical condition during the time period for which she seeks for which her disability benefits were denied.  Dr. Goldman reached his conclusion after examining Rodriguez's prior medical records and her symptoms and limitations over time, including during the relevant time period.

There is also a reasonable probability that the evidence in Dr. Goldman's report would change the ALJ's decision.  The report relies on Dr. Sanchez-Caso's opinion and diagnosis, and is relevant to clarifying and understanding his treating physician's opinion.  Furthermore, by providing an explanation of the development of Rodriguez's condition, it provides an objective basis for her earlier subjective complaints.[61]  Accordingly, the Court finds that Dr. Goldman's report is relevant, retrospective evidence to be considered on remand.

## C.  The ALJ Erred by Failing to Properly Evaluate Ms. Rodriguez's Credibility

Rodriguez argues that the ALJ did not properly evaluate Rodriguez's credibility. Specifically, Rodriguez maintains that the ALJ should have found her subjective complaints regarding the intensity, persistence, and limiting effects of her symptoms to be credible.  Rodriguez contends that the ALJ was required to conduct a seven-factor analysis in considering her subjective complaints.  Rodriguez asserts that the ALJ's credibility determination is insufficient because the ALJ only considered one factor, Rodriguez's daily activities. Rodriguez concludes that the ALJ's

---

[61]*See Ripley,* 67 F.3d at 556.

failure to articulate credible and plausible reasons for rejecting her subjective complaints is grounds for remand.

Rodriguez testified that she has constant pain and discomfort in her back and that her medications do not relieve her pain.[62]   Rodriguez also testified about her physical limitations, including her ability to sit no more than one and a half hours at a time, of which she is only comfortable sitting continuously for about twenty to thirty minutes.[63]   Rodriguez further testified about her daily activities, which include light cooking, driving, going to church, watching television, and reading.[64]   In considering the credibility of Rodriguez's testimony, the ALJ found the following:

> After considering the evidence of record, the undersigned finds that the claimant's medically determinable impairments could reasonably be expected to produce the alleged symptoms, but that the claimant's statement concerning the intensity, persistence, and limiting effects of these symptoms are not entirely credible. The evidence shows that claimant had surgery in 2003 and was able to return to work in 2004 earning substantial gainful activity and also earned over $8,000 in 2005. There is no evidence of worsening of her condition since surgery. In fact, radiology findings show her scoliosis as stable. She is able to take care of her personal needs, cook, grocery shop and go to church. She is able to drive. She testified to depression, but there is no diagnosis or evidence of any mental health treatment. Therefore, the undersigned finds that the claimant's allegations of an incapacitating impairment are not fully credible. (Social Security Rule 96-7p).

Social Security Ruling 96-7p states that, in determining a complainant's credibility, the ALJ must consider the objective medical evidence, the individual's subjective complaints, the statements of treating physicians, and all other relevant evidence.[65]   Moreover, the ALJ  must consider seven

---

[62]Tr. at 561-562.

[63]Tr. at 563.

[64]Tr. at 565-567.

[65]SSR 96-7p, 1996 WL 374186 at *5 (S. S. A.).

factors in making his determination on the credibility of complainant's subjective complaints: (1) the individual's daily activities, (2) the location, duration, frequency, and intensity of the individual's pain or other symptoms, (3) factors that precipitate and aggravate the symptoms, (4) the type, dosage, effectiveness, and side effects of any medications the individual takes or has taken to alleviate pain or other symptoms, (5) treatment the individual receives for relief of pain or other symptoms, (6) any measure other than treatment that individual uses to relieve pain or other symptoms, and (7) any other factors concerning the individual's functional limitations and restrictions due to pain or other symptoms.[66] The ALJ's credibility determination must not be made in a single, conclusory statement that the complainant's allegations are not credible, but must instead be supported by specific reasons for such determination.[67]

The Court finds that the ALJ erred in failing to engage in a proper analysis of Rodriguez's credibility. Although the ALJ noted that Rodriguez was able to work for two years after her surgery in 2003 and noted evidence that Rodriguez's scoliosis is stable,[68] he did not address the seven factors listed in SSR 96-7. Furthermore, the ALJ's conclusions regarding Rodriguez's credibility are closely related to his conclusions regarding treating physician report Dr. Sanchez-Caso's report, Dr. Goldman's report, and his ultimate conclusion regarding her ability to perform sedentary work. On remand, the consideration of several of the seven credibility factors may change may change upon obtaining more information and clarification regarding the conclusions in Dr. Sanchez-Caso's report.

---

[66]*Id*. at *3.

[67]*Id*.

[68]*Id*.

**D. The ALJ Erred by Relying on the Medical-Vocational Guidlines at Step Five of the Evaluation Process**

Rodriguez argues that the ALJ should not have relied on the Medical-Vocational Guidelines (MVG) when determining whether there is work in the national economy that Rodriguez could perform. At step five of the evaluation process, the ALJ applied Rules 201.23 and 201.24 of the MVG.[69] Pursuant to these rules, the ALJ found that Rodriguez has the residual functional capacity to perform the full range of sedentary work with occasional postural limitations.[70] The ALJ stated that "[t]he additional limitations have little or no effect on the occupational base of unskilled sedentary work."[71] The ALJ concluded that Rodriguez is not disabled as defined in the Social Security Act.[72] The ALJ did not rely on a vocational expert in making his determination.

Rodriguez contends that, because of her significant nonexertional impairments, the ALJ was not permitted to apply the MVG to her case and instead was required to use a vocational expert to establish the jobs that she could perform. Rodriguez maintains that her significant nonexertional limitations include the inability to sit or stand for periods over two hours, severe pain, and serious limitations on her ability to climb, balance, stoop, kneel, crouch, and crawl.

The Fifth Circuit has held that the ALJ may rely solely on the MVG in determining if there is work that a claimant can perform if the claimant's impairments are solely exertional or if the claimant's nonexertional impairments do not sufficiently affect the claimant's residual functional

---

[69]Tr. at 21.

[70]*Id.*

[71]*Id.*

[72]*Id.*

capacity.[73]  However, the ALJ must rely on a vocational expert to establish the jobs that a claimant is able to perform if the claimant suffers from nonexertional impairments that sufficiently affect the claimant's residual functional capacity.[74]

This Court finds that the ALJ erred in relying solely on the MVG to determine that Rodriguez has the residual functional capacity to perform the full range of sedentary work.  As noted above, the ALJ erred in failing to obtain further clarification regarding Rodriguez's sitting limitation.  The facts at issue directly bear on Rodriguez's ability to perform sedentary work.  Thus, on remand, the ALJ should reconsider his reliance on the MVG, depending on the outcome of his re-examination of evidence and opinions submitted by the treating physician.

## CONCLUSION

For the foregoing reasons, the Court does not accept the recommendation of the Magistrate Judge, and the decision to deny disability benefits to Rodriguez is REMANDED to the Commissioner for further deliberation in accordance with this decision.

It is so ORDERED.

SIGNED this 12th day of October, 2010.

XAVIER RODRIGUEZ
UNITED STATES DISTRICT JUDGE

---

[73]*Newton*, 209 F.3d at 458.

[74]*Id.*